UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHEL LABADIE,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>    Defendants. | CASE NO. C09-1276 MJP<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS PERSONAL CAPACITY CLAIMS |

  This comes before the Court on motions to dismiss filed by Defendants Eric Lehman and Jeff Starrett (Dkt. No. 43), Isidorio Longoria (Dkt. No. 48), David Decker (Dkt. No. 50), Jesse Cobb and Becky Elston (Dkt. No. 52), and Edward Escobar (Dkt. No. 57). Having reviewed the motions, the responses (Dkt. No. 55, 61, 67), the reply (Dkt. No. 59, 63, 64, 65, 69), and all related filings, the Court GRANTS in part and DENIES in part Defendants' motions to dismiss.

**Background**

  Plaintiff Michel Labadie ("Labadie") is a Canadian citizen currently residing in British Columbia. (Am. Compl. ¶ 1.1.) Defendants are the United States and nine individuals (collectively referred to as "Individual Defendants") who are either Custom and Border Patrol

("CBP") Officers or Immigration and Customs Enforcement ("ICE") Special Agents. (Id. ¶ 1.2-1.11.)

On September 9, 2006, Labadie attempted to cross the U.S.-Canadian border at the Pacific Highway Crossing in Blaine, Washington. (Am. Compl. ¶ 4.4.) Labadie alleges he was referred from the primary inspection area to the secondary inspection area where Defendant David Decker ("Decker"), a CBP Officer, entered his name into a computer. (Id. at ¶ 4.4-4.12.) After reviewing the computer entry on Labadie, Decker called for Defendant Edward Escobar ("Escobar"), another CBP Officer, to assist him. (Id.) Escobar was the CBP Officer with whom Labadie had gotten into a physical altercation with a year prior at the same border crossing. 1 (Id. at ¶ 4.2.)

When Escobar recognized Labadie from the prior incident, Escobar allegedly viewed CBP's database and told Labadie to "go back" to Canada. (Id. at ¶ 4.2) Labadie responded by asking under what authority he was required to return. (Id. at ¶ 4.4.) As alleged, Escobar "yelled for assistance from other Defendants named [in the Complaint] and approached Plaintiff, grabbed his arm and within less than three (3) seconds ordered the other Defendants to 'take him down!'" (Id.)

Based on Labadie's complaint, Escobar placed his arm around Labadie's neck and punched him in the face. (Id. at ¶ 4.5.) Once Labadie was restrained, he was detained in a holding cell and subsequently interviewed by Defendant Eric Lehmann ("Lehmann") and Jeffrey Starrett ("Starrett"), ICE Special Agents. (Id. at ¶ 4.6-4.10.) Labadie requested the assistance of

---

[1] While Labadie includes factual allegations regarding the 2005 incident in his Complaint, Labadie clarified in his response to the motions to dismiss that he does not allege any claims against Defendants based on that prior altercation. (Dkt. No. 67 at 3 n.3.)

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS
PERSONAL CAPACITY CLAIMS- 2

an attorney but was denied. (Id.) Labadie believes Lehmann eventually prepared a press release falsely stating that Plaintiff had assaulted Escobar on two separate occasions. (Id. at ¶ 4.10.)

In addition to Decker, Escobar, Lehmann and Starrett, Labadie sues Isidoro Longoria ("Longoria"), Jesse Cobb ("Cobb"), Becky Elston ("Elston"), who are CBP Officers who allegedly assisted Escobar in detaining Labadie. Labadie asserts ten claims against the Individual Defendants in their personal capacity: (1) violations of Labadie's right to free speech under the First Amendment (2) unlawful detention under the Fourth and Fifth Amendment (3) excessive force under the Fourth Amendment (4) unlawful search in violation of the Fifth Amendment (5) deprivation of Labadie's right to legal counsel under the Sixth Amendment (6) defamation, (7) false light, (8) civil assault, (9) civil battery, and (10) false imprisonment.

Seven of the nine Individual Defendants seek to dismiss all of Labadie's personal capacity claims under Fed. R. Civ. P. 8(a)(2) for failure to state a claim, or alternatively, seek summary judgment. Labadie requests the Court continue the pending summary judgment motion pursuant to Rule 56(f) so that he may conduct discovery.[2] The remaining two Individual Defendants (Honti and Martinez) recently filed a motion to dismiss for improper service; however, the motion is not ripe for consideration at this time. The United States does not seek dismissal of Labadie's claims under the Federal Tort Claims Act ("FTCA").

\\

\\

\\

---

[2] The Federal Rules of Civil Procedure were recently amended. The amendments became effective in December 2010 and Defendants' motions were filed in 2011. The applicable rule for requesting further discovery is now Fed. R. Civ. P. 56(d). Nevertheless, the Court maintains Labadie's out-dated citation for clarity purposes.

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS
PERSONAL CAPACITY CLAIMS- 3

**Analysis**

I. Motion to Dismiss and Summary Judgment – Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 545, 127 S.Ct. 1955) (further noting that plausibility lies somewhere between allegations that are "merely consistent" with liability and a "probability requirement"); see also Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir.2009) ("In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (citing Iqbal at 1949). The Court must accept plaintiffs' factual allegations as true, but need not accord the same deference to legal conclusions. Id. at 1949-150 (citing Twombly at 555, 127 S.Ct. 1955). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, at 1950 (citation omitted).

 Generally, "[t]he Court may not consider matters outside the pleadings" without converting the 12(b)(6) motion into a motion for summary judgment. In re Hawaiian & Guamanian Cabotage Antitrust Litig., 647 F.Supp.2d 1250, 1267 (W.D.Wash.2009); see also Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir.2001); see Fed.R.Civ.P. 12(d). There are two exceptions to this rule. First, the Court may consider documents not physically attached to the complaint if the documents' "authenticity ... is not contested and the plaintiff's complaint

necessarily relies on them." Lee, 250 F.3d at 688 (citation omitted). Second, the Court may "take judicial notice of matters of public record." Id.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there are no genuine issues of material fact for trial and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). Once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

II.     First Amendment

Labadie asserts a First Amendment claim against Escobar only. Labadie believes his right to free speech was violated when Escobar restrained him for peaceably inquiring as to why he was required to go back to Canada. (Dkt. No. 27, ¶ 5.24-26.) Defendants argue Labadie's claim should be dismissed because Labadie fails to state a claim, free speech violations are not actionable under Bivens and qualified immunity applies. The Court agrees only that qualified immunity bars Labadie's First Amendment claim.

To assert a First Amendment claim, a plaintiff must allege defendant's actions deterred or chilled plaintiff's speech and that such deterrence was a substantial or motivating factor for the

1  defendant's conduct. Mendocino Environmental Ctr v. Mendocino Cty, 192 F.3d 1283, 1300

2  (9th Cir. 1999). To demonstrate a defendant "intended to interfere with [plaintiff's] First

3  Amendment rights," the proper inquiry is "whether an official's acts would chill or silence a

4  person of ordinary firmness from future First Amendment activities." Id.  Second, a plaintiff

5  must allege causation, i.e., that defendant's desire to cause the chilling effect was a but-for cause

6  of the defendant's action. Skoog v. County of Clackamas, 469 F.3d 1221, 1232 (9th Cir. 2006).

7         Here, Labadie sufficiently pleads a constitutional violation. Defendant's actions would

8  chill a reasonable person from future First Amendment activities. After witnessing Labadie

9  being taken down by several immigration officers, a reasonable person would likely be deterred

10 from inquiring about their ability to cross the border. To the extent Defendants argue First

11 Amendment claims are not actionable under Bivens, Defendants argument is misleading. In

12 Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, the Supreme Court

13 recognized an implied private action for damages against federal officers alleged to have violated

14 a plaintiff's constitutional rights. 403 U.S. 388 (1971). While implied causes of action are

15 generally disfavored and the Supreme Court has not expressly extended Bivens liability, the

16 Ninth Circuit has recognized Bivens actions under the First Amendment. See, e.g., Gibson v.

17 United States, 781 F.2d 1334 (9th Cir. 1986); Moss v. U.S. Secret Service, 572 F.3d 962, 967 n.4

18 (9th Cir. 2009).

19        Defendant also argues Labadie is not entitled to U.S. constitutional protections as a

20 foreign national, the Court finds the argument unpersuasive. In United States v. Verdugo-

21 Urquidez, the Supreme Court held the Fourth Amendment did not apply to U.S. agents' searches

22 of a foreign national's property on foreign soil. 494 U.S. 259 (1990). In recognizing a

23 "Government must be able to 'functio[n] effectively in the company of sovereign nations,'" the

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS
PERSONAL CAPACITY CLAIMS- 6

1 Court held the Fourth Amendment did not apply on foreign soil. Id. at 274. In contrast, Labadie

2 alleges constitutional violations on the U.S.-Canadian border. While Labadie is a foreign

3 national not yet admitted to the United States, there is no concern that application of U.S.

4 constitutional provisions would interfere with a "world of nation-states." Id.; see also Wang v.

5 Reno, 81 F.3d 808, 818 n.16 (9th Cir. 1996)(distinguishing Verdugo-Urquidez and finding the

6 Fifth Amendment applied to an alien living in China who was forced to testify in the United

7 States).

8     Nevertheless, Labadie's claim is barred by qualified immunity. "The doctrine of qualified

9 immunity protects government officials 'from liability for civil damages insofar as their conduct

10 does not violate clearly established statutory or constitutional rights of which a reasonable person

11 would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009)(quoting Harlow v.

12 Fitzgerald, 457 U.S. 800, 818 (1982)). "The protection of qualified immunity applies regardless

13 of whether the government official's error is a mistake of law, a mistake of fact, or a mistake

14 based on mixed questions of law and fact." Id. (quotation omitted). To determine whether

15 qualified immunity applies, the Court has discretion in applying one or both steps of a two-step

16 inquiry set out in Saucier v. Katz, 533 U.S. 194, 201 (2001). Pearson, 129 S. Ct. at 818. The

17 two-step inquiry considers whether the plaintiff has alleged a violation of a constitutional right

18 and/or whether the right at issue was "clearly established" at the time of the alleged misconduct.

19 Id. at 815-16. To be considered "clearly established" for the purposes of qualified immunity,

20 "[t]he contours of the right must be sufficiently clear that a reasonable official would understand

21 that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

22     Here, Labadie's right to be free from enforcement action motivated by retaliatory animus

23 was not clearly established. See id. (finding qualified immunity applied to plaintiff's First

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS
PERSONAL CAPACITY CLAIMS- 7

Amendment claim when police aggressively executed a warrant against a plaintiff who filed a lawsuit against the County and another officer). As in Skoog, Labadie's First Amendment rights were unclear. Compare Dahl v. Holley, 312 F.3d 1228, 1236 (11th Cir. 2002); Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001)(holding that an absence of probable cause was required in claims of retaliatory arrest) with Greene v. Barber, 310 F.3d 889, 895 (6th Cir. 2002)(holding that a claim for retaliatory arrest could be made even if probable cause existed for the arrest). While foreign nationals may assert a constitutional claim, the Court finds qualified immunity applies and DISMISSES Labadie's First Amendment claim against Escobar.

### III. Unlawful Detention under the Fourth and Fifth Amendment

To the extent Labadie alleges a separate unlawful detention claim, Defendants argue the claim fails because Labadie is a foreign national who does not benefit from U.S. constitutional protections and qualified immunity applies. While U.S. constitutional protections apply to Labadie, as discussed above, the Court finds Labadie's unlawful detention claim barred by qualified immunity.

Here, Labadie's claims against the seven Individual Defendants are barred by qualified immunity at the first-step of the analysis—he fails to allege a violation of a constitutional right. As recognized in United States v. Montoya de Hernandez, "the Fourth Amendment's balance of reasonableness is qualitatively different at the international border than in the interior." 473 U.S. 531, 538 (1985). Routine searches of foreign nationals seeking entrance into the United States are not subject to any requirement of reasonable suspicion. Id. This principle is further codified by statute which states, "all persons coming into the United States from foreign countries shall be liable to detention and search by authorized officers or agents." 19 U.S.C. § 1582; see also 8 U.S.C. § 1225(b)(2)(A)("[I]f [an] examining immigration officer determines that an alien

1  seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be

2  detained for a [removal proceeding].")  CBP Officers and ICE Agents are considered

3  "immigration officers" under 8 U.S.C. § 1101(a)(18); see also 19 C.F.R. 24.16; 8 C.F.R. §

4  103.1(b).  Since Escobar, Longoria, Cobb, Elston and Decker are CBP Officers and Lehmann

5  and Starrett are ICE Special Agents, the Individual Defendants had authority to detain Labadie

6  who was a foreign national attempting to enter the United States but not "clearly and beyond a

7  doubt entitled" to enter.  8 U.S.C. § 1225(b)(2)(A).

8        Since Labadie fails to allege a violation of a constitutional right, the Court DISMISSES

9  Labadie's unlawful detention claims against the seven Individual Defendants.

10      IV.    Excessive Force under the Fourth Amendment

11          a.    Lehmann and Starrett

12        Labadie makes general allegations that Escobar and "the other Defendants named herein"

13  used excessive force in restraining him.  Lehmann and Starrett seek to dismiss, or alternatively,

14  seek summary judgment.

15        First, the Court declines to dismiss based on failure to state a claim.  Whether police force

16  during an arrest violates the Fourth Amendment is a question of objective reasonableness,

17  looking at the totality of the circumstances.  Luchtel v. Hagemann, 623 F.3d 975, 989 (9th Cir.

18  2010).  Reasonableness is determined by balancing the Plaintiff's Fourth Amendment interest

19  against the countervailing interest, looking to (1) the severity of the crime at issue, (2) whether

20  the plaintiff posed an immediate threat to the safety of the officers or others, and (3) whether the

21  plaintiff actively resisted arrest or attempted to evade arrest by flight.  Id. (citing Graham v.

22  Connor, 490 U.S. 386, 396 (1989).  Also relevant is (4) the quantum of force used against

23

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS
PERSONAL CAPACITY CLAIMS- 9

1  plaintiff. Id. The second factor, the threat posed by the suspect, is the most important. Smith v.
2  City of Hemet, 394 F.3d 689 (9th Cir. 2005).

3        Here, Labadie alleges a violation of his constitutional rights. Specifically, Labadie
4  alleges he sought admission into the United States, yet was told to "go back" to Canada and,
5  promptly, taken down by Escobar. (Am. Compl. ¶ 4.4.) It appears the only crime suspected
6  when Individual Defendants took down Labadie was impeding a federal officer or resisting
7  arrest; therefore, the first Graham factor favors Labadie. Likewise, the second and third factors
8  also favor Labadie because he did not actively resist arrest and posed no immediate threat to the
9  safety of the officers. While Labadie was involved in a prior altercation a year prior, it is not
10 clear he presented any immediate threat in 2006. (See Dkt. No. 46-47 (video)). Also, Labadie
11 appears to have crossed at a different border point twenty-three times between July 2005 and
12 September 2006 without incident. (Am. Compl. ¶ 4.3.) Based on the pleadings, Labadie alleged
13 a violation of a clearly established constitutional right by "Defendants named herein," including
14 Lehmann and Starrett, precluding dismissal.

15       Nevertheless, Labadie's claim against Lehmann and Starrett fail on summary judgment.
16 Considering the declarations of Lehmann, Starrett, and Labadie, the Court finds no issue of
17 material fact exists. (See Lehmann Decl., Dkt. 45; Starrett Decl. Dkt. No. 44; and Labadie Decl.,
18 Dkt. No. 56.) Lehmann and Starrett testify that their contact with Labadie was limited to their
19 interview of Labadie after he was placed in a holding cell. (Lehmann Decl., ¶ 10-17; Starrett
20 Decl. ¶ 10-17.) In other words, Lehmann and Starrett testify that they were not involved in
21 restraining Labadie. In response, Labadie testifies Lehmann and Starrett's investigation of the
22 arrest was flawed but does not contest the fact that Lehmann and Starrett were not involved in
23 his arrest. (Labadie Decl., ¶ 32-62.) The Court finds no factual dispute exists as to a material
24

1  issue. While Labadie requests time to conduct discovery, the Court observes Labadie filed this
2  action on September 9, 2009. His inability to identify a factual dispute more than a year and a
3  half after litigation undermines his request that the Court defer the motion pending further
4  discovery.
5        To the extent Labadie believes Lehmann and Starrett are liable for failing to prevent the
6  use of excessive force by others, his argument fails. Lehmann and Starrett are only liable if they
7  had the opportunity to intercede. See Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir.
8  2000). As discussed, there is no evidence that Lehmann and Starrett used excessive force during
9  the investigation or that either were even present when Labadie was initially restrained.
10       Since no factual dispute exists regarding excessive force and Labadie fails to set forth the
11 specific facts he hopes to elicit from further discovery as required under Fed. R. Civ. P. 56(f), the
12 Court GRANTS Lehmann and Starrett summary judgment based on qualified immunity.
13       b. <u>Longoria</u>
14 Labadie makes general allegations that Escobar and "the other Defendants named herein"
15 used excessive force in restraining him. Longoria seeks to dismiss, or alternatively, requests
16 summary judgment.
17       As discussed above, the Court finds Labadie states a claim for excessive force against
18 Longoria and the other Individual Defendants. However, again, when considering the parties'
19 respective declarations, Labadie fails to identify a dispute as to material fact. Longoria testifies
20 that his contact with Labadie was limited to directing him to slow down as he was driving to the
21 secondary inspection area and responding to Labadie's apparent distress while in the holding
22 cell. (Longoria Decl., Dkt. No. 49, ¶ 6-12.) Longoria testifies that he did not witness or
23 participate in the detention or search of Labadie. (Id. ¶ 8-9.)
24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS
PERSONAL CAPACITY CLAIMS- 11

1    Labadie submits a declaration that references Longoria exactly once—to state his
2 declaration is in response to Longoria's motion to dismiss. (Labadie Decl., Dkt. No. 61.) There
3 is no evidence, even in the form of Labadie's own testimony, that Longoria was involved in his
4 arrest or even present inside the inspection area when he was detained.  While Labadie argues
5 Longoria's declaration contains inconsistencies with Elston's, the inconsistencies relate to events
6 occurring outside the secondary inspection area and are unrelated to his detention.  In fact, it
7 appears Labadie acknowledges Longoria was outside at the time of his arrest and not present.
8 The Court finds no dispute as to <u>material</u> fact.
9    Since there is no evidence of a constitutional violation and Labadie fails to set forth the
10 specific facts he hopes to elicit from further discovery, the Court GRANTS summary judgment
11 with respect to the excessive force claim against Longoria.
12    c.  <u>Decker</u>
13    Labadie makes general allegations that Escobar and "the other Defendants named herein"
14 used excessive force in restraining him. Decker seeks to dismiss or alternatively requests
15 summary judgment.
16    As discussed above, the Court finds Labadie alleges a violation of a clearly established
17 constitutional right against all of the Individual Defendants.  In addition, when considering the
18 declarations of Decker and Labadie, the Court finds a dispute exists as to the factual
19 circumstances of Labadie's detention.  Decker claims his physical involvement was limited to
20 "holding his ankle until handcuffs were applied." (Decker Decl., Dkt. No. 51, ¶ 15.)  But Labadie
21 testifies that he "felt several officers intentionally attempting to inflict pain via various pressure
22 points, twisting [his] wrists, arms, and legs in every imaginable direction." (Labadie Decl., ¶
23 26.)  While video from a surveillance camera was provided, it is difficult to discern Decker's role
24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS
PERSONAL CAPACITY CLAIMS- 12

1  in restraining Labadie and the video contains no audio. (Dkt. No. 46-47.) Therefore, the Court

2  finds a genuine issue of material fact exists with respect to Decker and DENIES Defendant's

3  motion for summary judgment.

4        d. <u>Cobb and Elston</u>

5      Labadie makes general allegations that Escobar and "the other Defendants named herein"

6  used excessive force in restraining him. Cobb and Elston seek to dismiss or alternatively request

7  summary judgment.

8      As discussed above, Labadie alleges a violation of a clearly established right against all

9  of the Individual Defendants. In addition, when considering the declarations of Cobb, Elston,

10 and Labadie, the Court finds a dispute exists as to the factual circumstances of Labadie's

11 detention. Cobb testifies his physical involvement was limited to "applying handcuffs." (Cobb

12 Decl., Dkt. No. 53, ¶ 8.) Based on Cobb's version, "[b]y the time [he] reached them, the [other]

13 Officers had already wrested the plaintiff to the floor." (<u>Id.</u>) Cobb swears he "did not punch,

14 kick, or hit the plaintiff in any manner . . . [and] the only part of the plaintiff's body that [h]e had

15 any intentional contact with was his arms and hands." (<u>Id.</u>) Elston testifies her physical

16 involvement was limited to "holding the plaintiff's head still until handcuffs were applied.

17 (Elston Decl., Dkt. No. 54, ¶ 8.) Elston likewise swears she did not punch, kick, or hit Labadie.

18 (<u>Id.</u>)

19     In contrast, Labadie testifies that he "felt several officers intentionally attempting to

20 inflict pain via various pressure points, twisting [his] wrists, arms, and legs in every imaginable

21 direction." (Labadie Decl., ¶ 26.) While video from a surveillance camera was provided, it is

22 difficult to discern Cobb and Elston's role in restraining Labadie and the video contains no

23

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS
PERSONAL CAPACITY CLAIMS- 13

1 audio. (Dkt. No. 46-47.) Therefore, the Court finds a genuine issue of material fact exists with respect to Cobb and Elston's involvement in his arrest.

The Court DENIES Cobb and Elston's motion for summary judgment.

e. <u>Escobar</u>

Labadie alleges Escobar and "other Defendants named herein" used excessive force by taking him down, punching him, and ramming his head into the floor twice. (Am. Compl., ¶ 4.4-4.5.) Defendant seeks to dismiss or alternatively seeks summary judgment.

As discussed above, Labadie's complaint alleges a Fourth Amendment violation for excessive force. To the extent consideration of Escobar and Labadie's declarations convert Defendants' motion to dismiss into a motion for summary judgment, the Court finds a factual dispute exists as to the circumstances of Labadie's arrest. Escobar testifies that Labadie was clenching his fists and merely "executed an escort hold . . . [when] Labadie reared his back and began struggling and fighting against me." (Escobar Decl., Dkt. No. 58, ¶ 14.) Labadie testifies that "Escobar proceeded to place his arm around my neck, from behind, and punched me in the face. He then dragged me backwards to the ground by my neck. . . Escobar then rammed my head into the floor twice with all of his bodily weight." (Labadie Decl., Dkt. No. 68, ¶ 22.) the Court finds a factual dispute exists and DENIES summary judgment with respect to Labadie's claim against Escobar.

V. <u>Unlawful Arrest under the Fifth Amendment</u>

Labadie alleges Individual Defendants violated Equal Protection and his right to privacy under the Fifth Amendment when they conducted an invasive search and unlawful arrest.

\\

\\

1        a. <u>Lehmann and Starrett</u>

2        The Court finds qualified immunity bars Labadie's unlawful arrest claim against ICE Special Agents Lehmann and Starrett.

4        Labadie fails to demonstrate Lehmann and Starrett violated his clearly established constitutional right—the second-step of the qualified immunity analysis. To be considered "clearly established" for the purposes of qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987).

9        Here, Labadie alleges Lehmann interviewed him and then wrongfully subjected him to a criminal prosecution. But Lehmann and Starrett arrested Labadie after he was in a physical altercation with CBP Officers—as stated in Labadie's own complaint. Specifically, Labadie was prosecuted for violating 18 U.S.C. § 111 which relates to resisting or impeding an officer in or on account of the performance of official duties. A reasonable official would not understand Labadie's arrest to violate Labadie's constitutional rights.

15        In his response to Defendants' motion to dismiss, Labadie testifies that Lehmann and Starrett should have done additional investigation, such as contacting civilian witnesses and performing a lie detector test. None of these arguments contradicts what is clear from Labadie's complaint—that Lehmann and Starrett had probable cause to arrest Labadie and they did not violate a clearly established constitutional right. Even setting aside Lehmann and Starrett's testimony that they spoke with the U.S. Attorney's Office before arresting him, Labadie's factual allegations suggest Lehmann and Starrett had probable cause to arrest him. Labadie was involved in a physical altercation with immigration officers for a second time in little over a year. The Court DISMISSES Labadie's unlawful arrest claim against Lehmann and Starrett.

b. <u>Longoria</u>

The Court GRANTS summary judgment with respect to the Fifth Amendment claims. As discussed above, Labadie fails to offer any evidence that Longoria was personally involved or even present when he was detained, searched or arrested. To the extent Labadie believes Longoria is liable as the supervising CBP Officer, the argument fails. A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. <u>Taylor v. List</u>, 880 F.2d 1040-45 (9th Cir. 1989). Here, Longoria was outside the secondary inspection area and did not have any knowledge or information that any CBP Officer he supervised used excessive force and Labadie fails to provide any evidence to the contrary. Since there is no issue of material fact that Longoria was involved or present during Labadie's pat down or arrest, the Court GRANTS summary judgment with respect to Fifth Amendment claims against Longoria.

c. <u>Decker</u>

The Court DENIES summary judgment with respect to the Fifth Amendment claims against Decker. Decker testifies that he was not involved in the search or subsequent arrest of Labadie. (Decker Decl. ¶ 21.) However, a factual dispute remains as to when Labadie was arrested. When a detention becomes an arrest is a fact-specific determination made looking to the totality of the circumstances. <u>Washington v. Lambert</u>, 98 F.3d 1181 (9th Cir. 1996). While Decker views the arrest as having occurred after Labadie was detained, Labadie seems to suggest the arrest occurred earlier as Labadie was held down by Individual Defendants. (Am. Compl. ¶ 4.6.) If the arrest occurred when Labadie was held down, a jury may find individual Defendants violated Labadie's clearly established constitutional right. Since Decker's role in Labadie's detention, search, and arrest remains disputed, the Court DENIES summary judgment.

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS
PERSONAL CAPACITY CLAIMS- 16

      d. <u>Cobb and Elston</u>

The Court DENIES summary judgment with respect to the Fifth Amendment claims against Cobb and Elston. Cobb and Elston both testify that they were not involved in the search or subsequent arrest of Labadie. (Elston Decl. ¶ 12-13; Cobb Decl. ¶ 15.) However, as discussed above, a factual dispute remains as to when Labadie was arrested. While Cobb and Elston view the arrest as having occurred after Labadie was detained, Labadie seems to suggest the arrest occurred earlier as Labadie was held down by Elston and handcuffed by Cobb. (Am. Compl. ¶ 4.6.) Labadie's view that Cobb and Elston effectuated his arrest is further supported by the fact that Cobb is the officer who filled out the Incident Report. (Dkt. No. 53-1.) If the arrest occurred when Labadie was held down by Cobb and Elston, Individual Defendants did not have probable cause to arrest Labadie. Since Cobb and Elston's role in Labadie's detention, search, and arrest remains disputed, the Court DENIES summary judgment.

      e. <u>Escobar</u>

The Court DENIES summary judgment with respect to the Fifth Amendment claims against Escobar. Escobar testifies that he was not present during any search of the Plaintiff or his vehicle or during the subsequent arrest. (Escobar Decl., ¶ 21-22.) As discussed above, a factual dispute remains as to when Labadie was arrested. There is some suggestion that Labadie was arrested when he was physically restrained and handcuffed and, as alleged, Escobar was the principal officer involved in Labadie's detention. At this early stage of the litigation, the Court finds a more complete record is needed regarding Escobar's role in Labadie's detention, search, and arrest. As Labadie argues, witness testimony and audio from the surveillance camera may be available upon discovery. The Court DENIES summary judgment.

\\

1     VI.    <u>Right to Counsel under the Sixth Amendment</u>

2     Plaintiff stipulates to the dismissal of his Sixth Amendment claims against all Individual Defendants under <u>Bivens</u>. (Pltf's Opp'n Br., Dkt. No. 67, at pg. 14.) The Court DISMISSES all Sixth Amendment claims against the Individual Defendants.

5     VII.    <u>State tort law claims</u>

6     Labadie alleges various state tort law claims against Individual Defendants pursuant to <u>Bivens</u>. He asserts claims for defamation, false light, civil assault, civil battery, and false imprisonment. The Court finds none of Plaintiff's state tort law claims actionable as a <u>Bivens</u> violation.

Under <u>Bivens</u>, federal courts have inherent authority to award damages to plaintiffs whose federal constitutional rights were violated by federal officers. 403 U.S. 388, 395 (1971). But none of Labadie's state tort law claims are based on federal constitutional rights. Specifically, Labadie fails to identify any violation of a federal constitutional right due to Defendant's allegedly defamatory statements or portrayal of Labadie in a false light. (<u>See</u> Compl. ¶ 5.42-5.46.). As recognized by the Supreme Court, defamation and false light do not relate to federal constitutional rights. <u>See</u> <u>Stiegert v. Gilley</u>, 500 U.S. 226, 233 (1991)(finding defamation "may be recoverable under state tort law but is not recoverable in a <u>Bivens</u> action").

Likewise, with respect to Labadie's allegations of civil assault, battery, and false imprisonment, Labadie fails to identify any independent violation of a federal constitutional right. Civil assault, civil battery, and false imprisonment, are not independent constitutional claims actionable under <u>Bivens</u>. <u>See</u> <u>Arnold v. U.S.</u>, 816 F.2d 1306, 1311 (9th Cir. 1987)(finding plaintiff's claims of sexual harassment and assault were state-law tort claims, not constitutional torts). To the extent Labadie's federal constitutional rights are implicated, the state tort law

claims are duplicative of Labadie's claims under the Fourth Amendment. See, e.g., Raymond v. Bunch, 136 F.Supp.2d 71 (N.D.N.Y. 2001)(finding plaintiff's constitutional claim was "nothing more than a claim of excessive force and subsumed within his [excessive force] claim").

Since Bivens provides a cause of action for constitutional claims only, the Court DISMISSES Labadie's state tort law claims pursuant to Bivens for failure to independently implicate a federal constitutional right.

**Conclusion**

The Court DISMISSES Labadie's Fourth Amendment unlawful detention claim, Sixth Amendment claim, and all state tort law claims against Lehmann, Starrett, Longoria, Decker, Cobb, Elston, and Escobar. The Court DISMISSES Labadie's First Amendment claim against Escobar based on qualified immunity. With respect to Labadie's excessive force and unlawful arrest claims, the Court GRANTS Defendants Lehmann, Starrett and Longoria's motion for summary judgment and DENIES Decker, Cobb, Elston, and Escobar's motion for summary judgment. The Court DENIES Labadie's request to continue the summary judgment motion pending further discovery regarding Lehmann, Starrett, and Longoria because Labadie fails to identify specific facts he hopes to elicit from further discovery that would preclude summary judgment.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 12th day of April, 2011.

Marsha J. Pechman
United States District Judge